Case 1:20-cv-00004 Document 64 Filed on 09/09/21 in TXSD Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
September 09, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| OSCAR SOSA, | § | |
|    Petitioner, | § | |
| | § | |
| v | § | Civil Action No. 1:20-4 |
| | § | Criminal No. 1:15-668-1 |
| UNITED STATES OF AMERICA, | § | |
|    Respondent. | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On January 3, 2020, Petitioner Oscar Sosa filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. Dkt. No. 1. The Government has filed a response, asking the Court to deny the petition. Dkt. No. 30.

On June 15, 2021, the Court held an evidentiary hearing on this matter. Dkt. No. 58. Both parties have filed post-hearing briefs. Dkt. Nos. 62, 63.

After reviewing the record and the relevant case law, it is recommended that Sosa's motion be denied, because his claims are legally and factually unsupported by the record or are otherwise meritless.

**I. Background**

On August 11, 2015, a federal grand jury—sitting in Brownsville, Texas—indicted Sosa in a two-count indictment, charging him with: (1) conspiracy to possess with intent to distribute more than 50 grams of methamphetamine; and (2) possession with intent to distribute more than 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), & 846. U.S. v. Sosa, Criminal No. 1:15–668–1, Dkt. No. 1 (hereinafter "CR").

    **A. Trial**

On October 3, 2016, a five-day jury trial began. CR Dkt. No. 130. The Court will limit its discussion of the trial to the relevant issues.

Juan Sarmiento and Jose Galvan were arrested in Harlingen, Texas, with crystal meth sewn into their jackets. CR Dkt. No. 132, pp. 45-50. At trial, Sarmiento and Galvan

1

identified Sosa as the man who hired them to transport the drugs from Mexico to Florida. CR Dkt. No. 132, pp. 114-115; 288. They also identified Genaro Luera – who was dating Sosa's cousin – as someone working with Sosa to import the drugs. Id., pp. 109-120; CR Dkt. No. 133, p. 95. Luera testified that he routinely bought drugs from Sosa to resell. CR Dkt. No. 133, pp. 240-250. Luera testified that he worked with Sosa to send couriers – such as Sarmiento and Galvan – to South Texas to pick up drugs that were bought in Mexico and bring them to Florida. CR Dkt. No. 134, pp. 10-25.

Sarmiento, Galvan, and Luera all pled guilty to drug-related charges and entered into plea agreements with the Government to testify truthfully against Sosa.

Sosa's mother-in-law and wife testified during the defense case in chief. His mother-in-law testified that Sosa worked as a day laborer as a landscaper for a golf course and that he was a very "nice" and "friendly" man. CR Dkt. No. 135, pp. 22-23. His wife testified that Sosa would work as a day laborer and that he "really did not have a lot of money." Id., p. 51.

After deliberating for approximately three hours, the jury found Sosa guilty on both counts. CR Dkt. No. 135, pp. 221-37.

**B. Sentencing**

In the final presentence report ("PSR"), Sosa was initially assessed a base offense level of 38, predicated upon being held responsible for 5.96 kilograms of d-methamphetamine hydrochloride. CR Dkt. No. 102, p. 11. Sosa was assessed a two-level enhancement, because his actions involved the importation of methamphetamine and an additional four-level enhancement because he served as a leader of the smuggling operation. Id. His initial offense level came to 44; under the Sentencing Guidelines it was reduced to 43, as 43 is considered the maximum offense level.

Regarding his criminal history, Sosa had four adult criminal convictions and was assessed four criminal history points, resulting in a criminal history category of III. CR Dkt. No. 102, pp. 13-15. Based upon Sosa's offense level of 43 and criminal history category of III, the presentence report identified a guideline sentencing range of life imprisonment. Id., p. 18.

Sosa objected to the factual findings in the PSR that were based on the statements of Galvan, Sarmiento and Luera, alleging that their testimony was false. CR Dkt. No. 121. He also objected to the finding that Sosa was responsible for 5.96 kilograms of d-methamphetamine hydrochloride, arguing that the evidence only supported a finding of 2.89 kilograms. Id. He also objected to the finding that he was a leader/organizer. Id.

At sentencing, the Court overruled the objection about the statements from the co-conspirators and the objection concerning the leader/organizer enhancement. CR Dkt. No. 138, pp. 3-13. The Court granted the objection as to how many kilograms Sosa was responsible for, finding that he was only responsible for 2.89 kilograms. Id., p. 13. With this finding, Sosa had a new total offense level of 42, resulting in a guideline sentencing range of 360 months to life imprisonment. Id., p. 14.

Sosa moved for a downward departure, arguing that a 360-month sentence was grossly disproportionate to the sentences received by Galvan, Sarmiento, and Luera for engaging in the same conduct. CR Dkt. No. 138, pp. 17-20. The Court rejected the motion for a downward departure. Id.

On April 25, 2017, the Court sentenced Sosa to 360 months imprisonment and five years of supervised release. CR Dkt. No. 138, pp. 20-21. The judgment was issued on June 5, 2017. CR Dkt. No. 127.

**C. Direct Appeal**

Sosa timely filed a notice of direct appeal. CR Dkt. No. 123.

On direct appeal, Sosa raised three issues: "first, that the government presented impermissible profiling evidence when the DEA agent linked the profile of a drug dealer to Sosa's behavior; second, that the government improperly bolstered the credibility of all three eyewitnesses; and third, that the government violated the Confrontation Clause when a DEA agent testified about a tipster's statements that inculpated Sosa's mother." U.S. v. Sosa, 897 F.3d 615, 618 (5th Cir. 2018). The Fifth Circuit found that Sosa's counsel did not contemporaneously object to any of these errors. Accordingly, all of them were subject to plain error review. Id.

As to the first and second claims, the Fifth Circuit found that the Government acted improperly, but that Sosa was unable to demonstrate "a reasonable probability that his trial would have come out differently." Sosa at 620-22.  As to the third issue, the Fifth Circuit found that there was no clear Confrontation Clause violation. Id.  It affirmed Sosa's conviction.

Sosa filed a petition for writ of certiorari with the Supreme Court.  On January 7, 2019, the Supreme Court denied the petition. Sosa v. U.S., 139 S. Ct. 833 (2019).

**D. Current Petition**

On January 3, 2020, Sosa timely filed the instant § 2255 motion, requesting that the District Court vacate, set aside, or correct his sentence. Dkt. No. 1.  Sosa raised five separate claims of ineffective assistance of counsel: (1) counsel failed to explore the possibility of Sosa pleading guilty instead of going to trial; (2) counsel failed to object to the profiling testimony proffered by the DEA agent; (3) counsel failed to object to the AUSA bolstering the testimony of his co-conspirators; (4) counsel failed to properly investigate his case; and, (5) counsel failed to introduce mitigating evidence at sentencing. Dkt. No. 2.

On January 10, 2020, the Court ordered the Government to file a response to Sosa's petition. Dkt. No. 5.

On June 18, 2020, the Government filed a motion, seeking to have Sosa's trial counsel, file an affidavit in response to the claims of ineffective assistance. Dkt. No. 22. On June 19, 2020, the Court granted the motion and ordered Sosa's counsel to file the affidavit under seal. Dkt. No. 23.

On July 20, 2020, Sosa's trial counsel filed the affidavit. Dkt. No. 27.  In it, he said that he had several extensive conversations with Sosa about pleading guilty and secured two separate plea offers from the Government, but that Sosa would not plead guilty unless he was only going to receive a two-year sentence. Id.  As to the allegations that he failed to object to the profiling testimony and the bolstered testimony, Sosa's trial counsel admitted that he overlooked those objections "during the heat of trial and [his] focus on cross-examining the witnesses against Mr. Sosa." Id., p. 4.  As to the claim that he failed

4

to investigate Sosa's case, Sosa's trial counsel stated that he had "an excellent understanding of the evidence and a complete knowledge of the facts of the case." Id. He further stated that while Sosa wanted him to introduce check stubs to show that he was working for a golf course, instead of being a drug dealer, Sosa's trial counsel "decided they would not help our case and decided not to use them as evidence." Id., p. 5. As to the claim that he failed to introduce mitigating evidence, Sosa's trial counsel asserted that he filed objections, submitted exhibits, prepared testimony, filed objections to the PSR and sought a variance on Sosa's behalf. Id.

On July 31, 2020, the Government filed its response. Dkt. No. 30. The Government argued that Sosa failed to carry his burden as to any of his five claims of ineffective assistance of counsel.

On November 24, 2020, the Court found that this case presented contested evidentiary issues that could not be resolved solely via competing affidavits. Dkt. No. 37. Accordingly, the Court ordered that an evidentiary hearing be held; appointed counsel for Sosa; and, given the COVID-19 situation, ordered counsel to consult with Sosa as to whether he would waive his right to have an in-person evidentiary hearing. Id.

On February 19, 2021, Sosa informed the Court, via appointed counsel, that he was unwilling to waive his right to an in-person evidentiary hearing. Dkt. No. 50.

Accordingly, on February 22, 2021, the Court set this matter for an in-person evidentiary hearing on June 15, 2021. Dkt. No. 50.

On June 15, 2021, the Court held the evidentiary hearing. Sosa's trial counsel testified that during their first conversations, Sosa expressed an interest in pleading guilty. Dkt. No. 58, p. 8. Sosa's trial counsel "had the distinct impression that [Sosa] didn't realize [. . .] how much trouble he was in because it seemed like he was very sort of nonchalant about the time that he was going to be spending in jail." Id. After receiving an initial plea offer from the Government, Sosa's trial counsel told Sosa that he would likely be looking at a sentence in the range of around 15 years if he pled guilty. Id., p. 12. Sosa's trial counsel testified that Sosa's reply was, "it was a lot of time for doing nothing wrong." Id., p. 13. Sosa's trial counsel responded by telling Sosa that, "if he was going to plead guilty, one of

5

the things that he had to do was he was going to have to stand in front of a judge and accept that he committed a crime and that he knew that he was involved in a crime, or else the judges would not accept his guilty plea." Id., p. 14. When Sosa said he would not do that "because he didn't do anything wrong," Sosa's trial counsel replied, "well, the only other option is to go to trial." Id., p. Sosa responded, "then I want a trial." Id.

Sosa's trial counsel went back to the Government and received a second plea offer. One where the Government agreed to stipulate to the amount of drugs to be considered relevant conduct and agreed not to recommend that Sosa receive a sentencing enhancement for being a leader/organizer of the criminal conduct. Dkt. No. 58, pp. 17-18. Sosa's trial counsel informed Sosa that he estimated that Sosa would receive a sentence of about seven years if he accepted this plea agreement, but that if he went to trial and lost, Sosa's trial counsel estimated the sentence at between 20 and 30 years. Id., pp. 19-20. Sosa replied that he would plead guilty if he only received a sentence of two years. Id., pp. 20-21. Sosa's trial counsel said he would ask, but the Government quickly rejected that counteroffer. Id.

As to the paystubs, Sosa's trial counsel testified that Sosa gave him paystubs for a one-to-two-year period, representing his work at the golf course. Dkt. No. 58, p. 36. While arranging them in chronological order, Sosa's trial counsel discovered that there was a gap in the paystubs between November 2015 and March 2016, a gap which "fit perfectly" with the indictment, which alleged that Sosa was engaged in drug conspiracy during that time. Id. Sosa's trial counsel chose not to introduce the check stubs into evidence, because if the Government or a juror noticed the gap, "we're dead," because Sosa's defense was premised on his work as a landscaper and "no drug dealer [is] going to be cutting grass in Florida heat." Id., p. 37. Sosa's trial counsel decided to rest on the testimony of Sosa's wife and mother-in-law, both of whom testified that Sosa worked as a landscaper and not as a drug dealer. Id., p. 39. Sosa's trial counsel described his decision as a "tactical" one. Id., p. 40.

As to the argument that he failed to introduce mitigating evidence, Sosa's trial counsel testified that he "didn't want to waive" any meritorious appellate arguments in the mitigating evidence phase. Sosa's trial counsel stated that if he argued that Sosa was "just a drug courier" rather than a "drug kingpin," in an effort to receive a lesser sentence, "that's

6

an admission that will wipe out a lot of his appellate issues." Dkt. No. 58, p. 25. Sosa's trial counsel testified that Sosa told him that "he wanted to preserve as much of his appellate issues as possible and not go real hard at the sentencing." Id.

Sosa did not testify on his own behalf at the evidentiary hearing. Dkt. No. 58, p. 47.

At the conclusion of the hearing, the Court ordered Sosa to file a supporting brief and for the Government to file a response brief. Dkt. No. 56.  Sosa was also given the opportunity to file a reply brief. Id.

On July 28, 2021, Sosa timely filed his supporting brief. Dkt. No. 62.  Sosa argued that the failure to introduce the paystubs infused his trial with error, because the evidence was necessary to combat the improper profiling and bolstering by the Government. Id.

On August 18, 2021, the Government filed its response, arguing that the decision not to introduce the paystubs was a strategic choice that did not amount to ineffective assistance of counsel. Dkt. No. 63.  Sosa did not file a reply brief.

**III. Analysis**

    **A. Section 2255**

Sosa seeks relief pursuant to 28 U.S.C. § 2255. Dkt. No. 1.  As relevant here, that section provides:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Where a § 2255 petitioner exhausts or waives his direct appeal, courts may presume that he was fairly convicted. U.S. v. Willis, 273 F.3d 592, 595 (5th Cir. 2001).  Generally, a petitioner may not raise on collateral attack issues that he failed to raise on direct appeal, absent a showing of cause and prejudice. Id.  "[A] claim of ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be resolved on direct appeal." U.S. v. Bass, 310 F.3d 321,

7

325 (5th Cir. 2002).

"In a habeas action, federal courts stand willing to review issues of jurisdiction, allegations of substantial constitutional violations, and claims that exceptional circumstances resulted in a fundamental miscarriage of justice." Lawrence v. McCarthy, 344 F.3d 467, 474 (5th Cir. 2003).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim brought under § 2255 is subject to the two-prong analysis articulated in Strickland v. Washington, 466 U.S. 668 (1984). U.S. v. Grammas, 376 F.3d 433, 436 (5th Cir. 2004). To establish ineffective assistance, the petitioner must show: (1) that defense counsel's performance was deficient; and, (2) that the deficient performance prejudiced the defendant. Grammas, 376 F.3d at 436.

To prove that counsel's performance was deficient, petitioner must show that "it fell below an objective standard of reasonableness." U.S. v. Juarez, 672 F.3d 381, 385 (5th Cir. 2012). Courts will not "audit decisions that are within the bounds of professional prudence." U.S. v. Molina-Uribe, 429 F.3d 514, 518 (5th Cir. 2005).

## III. Analysis

Sosa has raised five different claims of ineffective assistance of counsel: (1) counsel failed to explore the possibility of Sosa pleading guilty; (2) counsel failed to object to the profiling testimony proffered by the DEA agent; (3) counsel failed to object to the AUSA bolstering the testimony of his co-conspirators; (4) counsel failed to fully investigate the case; and, (5) counsel failed to introduce mitigating evidence at sentencing. Each of these claims are meritless and are addressed below.

### A. Guilty Plea

Sosa asserts that he "specifically directed defense counsel to pursue a negotiated plea in this matter" and that Sosa's trial counsel was ineffective for failing to do so. This claim is not supported by the record.

The Court begins by noting that Sosa has no right to be offered a plea agreement. Lafler v. Cooper, 566 U.S. 156, 168 (2012). However, a defendant does have the right to effective assistance of counsel in the plea bargaining process. Missouri v. Frye, 566 U.S.

8

134, 141 (2012). "[I]t is the responsibility of defense counsel to inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo." Libretti v. U.S., 516 U.S. 29, 50–51 (1995). An attorney fulfills his constitutional "obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea. Apprising a defendant about his exposure under the sentencing guidelines is necessarily part of this process. A defendant cannot make an intelligent choice about whether to accept a plea offer unless he fully understands the risks of proceeding to trial." U.S. v. Herrera, 412 F.3d 577, 580 (5th Cir. 2005).

At the evidentiary hearing, the Government entered into the record two plea agreement offers that were proffered by the Government to Sosa's trial counsel. Dkt. No. 55. In the first agreement, the Government would have agreed to recommend that Sosa receive full credit for acceptance of responsibility and recommend that he be sentenced at the low end of the guideline sentencing range. Id., pp. 4-5. The second plea agreement contained the same promised recommendations from the first plea agreement and further agreed to recommend that relevant conduct be stipulated as 2.98 kilograms of methamphetamine and to recommend "no aggravating role adjustment." Id., pp. 15-16. As to the first agreement, Sosa's trial counsel estimated that Sosa would have received a sentence of around 15 years and the second agreement would have resulted in a sentence of around 7 years. Dkt. No. 58, pp. 14-20. Sosa has provided no evidence to show that his trial counsel estimates were inaccurate.

Thus, Sosa's trial counsel went back to the Government and received a different plea offer that cut the time of imprisonment in half. Sosa told his trial counsel that he would plead guilty if he would serve no more than two years. Dkt. No. 58, pp. 14-20. Sosa's trial counsel informed Sosa that such a plea was unlikely, but presented the counteroffer to the Government anyway. Id. The offer was rejected. Id. Thus, up until the point of jury selection, Sosa had two options: (1) accept the Government's second plea agreement and aim for a sentence of around 7 years or (2) take his chances at trial, knowing he faced a possible sentence that ranged from 10 years to life. Id., p. 22. As to the second

9

option, Sosa's trial counsel informed Sosa that he was probably looking at a sentence in the range of 20 to 30 years if he went to trial and lost. Id., p. 20.

Sosa has provided no evidence to show that his trial counsel's advice was deficient. In cases where counsel has been deficient in advising a client, it has come when the attorney made basic mistakes about the advantages/disadvantages of pleading guilty. See U.S. v. Grammas, 376 F.3d 433, 437 (5th Cir. 2004) (counsel failed to research whether client's prior convictions were crimes of violence, leading him to advise client that he would receive the same sentence regardless of whether he pled guilty or went to trial). But there is no evidence that Sosa's trial counsel's advice to Sosa was factually incorrect. As previously noted, Sosa could choose to plead guilty and likely receive a sentence of around 7 years or go to trial, with the possibility of an acquittal and the possibility of a sentence of 20 to 30 years in prison. Sosa chose the latter and it was his choice to make. See Jones v. Barnes, 463 U.S. 745, 751 (1983) ("the accused has the ultimate authority to make certain fundamental decisions regarding the case, [such] as to whether to plead guilty"). But Sosa's trial counsel's advice was not deficient, nor did he fail to seek out a favorable plea bargain. As such, this claim should be denied.

### B. Failure to Object to Profiling Testimony

Sosa argues that counsel was ineffective for failing to object to profiling testimony proffered by the DEA agent.

Sosa's trial counsel admits that the failure to object was deficient performance, chalking his failure to object to the "heat of trial." Dkt. No. 27, p. 4. The Court must now consider whether the failure to object prejudiced Sosa.

Because Sosa's trial counsel did not contemporaneously object, the profiling testimony was reviewed under a plain error standard. Under this standard, Sosa had to meet the following four elements: "(1) there must be an error or defect, (2) the error must be clear or obvious, rather than subject to reasonable dispute, (3) the error must have affected the appellant's substantial rights, and (4) the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings." Sosa, 897 F.3d at 618 (cleaned up). As to the third prong, an error affects a defendant's substantial rights if there

10

is "a reasonable probability that his trial would have come out differently but for the illegitimate aspects of the agents' testimony." U.S. v. Morin, 627 F.3d 985, 998 (5th Cir. 2010) (internal quotation marks omitted).

As to Sosa, in its first decision, the Fifth Circuit found that the impermissible testimony met the first two prongs, i.e., it was in error and the error was clear based on prior precedent. Sosa, 897 F.3d at 620. It found, however, that the error did not affect Sosa's substantial rights because the strength of the testimony of three co-conspirators identifying Sosa as a drug trafficker meant that the error in admitting the profiling testimony did not make the difference at trial. Id.

This decision on "direct appeal constitutes law of the case for purposes of [the] § 2255 action." U.S. v. Goudeau, 512 F. App'x 390, 393 (5th Cir. 2013). "The law of the case doctrine prohibits courts from relitigating matters that have previously been decided." U.S. v. Bowerman, 131 F. App'x 992, 993 (5th Cir. 2005). Thus, this Court is bound by the Fifth Circuit's decision that permitting the inadmissible profiling testimony did not affect Sosa's substantial rights. U.S. v. Matthews, 312 F.3d 652, 657 (5th Cir. 2002).

Had Sosa's trial counsel contemporaneously objected to the profiling testimony and the objection had been overruled, then the Fifth Circuit would have reviewed the profiling testimony under an abuse of discretion and harmless error standard. Even if the Fifth Circuit were to find that it was an abuse of discretion to admit the testimony, Sosa would have to show that the error was not harmless. "Under the harmless error doctrine, an error is reversible only if it affected a party's substantial rights." U.S. v. McCann, 613 F.3d 486, 498 (5th Cir. 2010).

This claim failed on appeal because Sosa could not show that the error impacted his substantial rights. Sosa, 897 F.3d at 620. Even if counsel had objected, Sosa would still have to show that the profiling testimony impacted his substantial rights. Given the testimony of three co-conspirators identifying him as a drug trafficker, Sosa would be unable to meet this standard. Id. As such, Sosa was not prejudiced by his attorney's failure to object. This claim should be denied.

### C. Failure to Object to Bolstering

Sosa argues that his trial counsel was ineffective for failing to object to the AUSA bolstering the testimony of his co-conspirators. This claim, also, should be denied.

Again, Sosa's trial counsel admitted that he failed to object to the testimony. The Court will assume that the failure to object was deficient and turn to whether the failure to object was prejudicial.

As with the previous claim, the lack of an objection meant that the Fifth Circuit reviewed this claim under a plain error standard on direct appeal. Sosa, 897 F.3d at 620. The Fifth Circuit assumed that Sosa had shown that there was an error and that it was obvious, but concluded that Sosa "cannot show that the improper bolstering affected his substantial rights." Id., at 622. The appellate court found that "the reciprocal corroboration provided by three conspirators identifying Sosa as a fellow participant in their crime was likely a much greater factor in the jury's acceptance of that testimony than was the bolstering." Id.

As with before, the Court is bound, under the law of the case doctrine, by the Fifth Circuit's determination that the Government's improper bolstering did not affect Sosa's substantial rights. Goudeau, 512 F. App'x at 393; Bowerman, 131 F. App'x at 993; Matthews, 312 F.3d at 657.

Had Sosa's trial counsel contemporaneously objected, and the objection had been overruled, the Fifth Circuit would have reviewed the claim under an abuse of discretion standard. U.S. v. Gracia, 522 F.3d 597, 600 n. 2 (5th Cir. 2008). In so doing, the appellate court would, again, consider whether the prosecutor's remarks: (1) were improper and (2) whether they prejudiced the defendant's substantial rights. U.S. v. Arthur, 432 F. App'x 414, 425 (5th Cir. 2011). In determining whether it prejudiced the defendant's substantial rights, the Court considers "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." Id.

Even under this standard, Sosa's claim would have failed. The Fifth Circuit has already found that the strength of the evidence of Sosa's guilt outweighed the magnitude

12

of the statement's prejudice. Sosa, 897 F.3d at 622. Indeed, it expressly found that Sosa did not establish "that the bolstering substantially affected the outcome" of the trial. Id. As such, this claim should be denied.

### D. Failure to Investigate

Sosa asserts that his trial counsel failed to fully investigate his case, specifically by failing to introduce evidence that he worked as a landscaper at a golf course, rather than as a drug dealer. This claim is belied by the record.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome." Cox v. Stephens, 602 F. App'x 141, 146 (5th Cir. 2015) (unpubl.) (quoting Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993)). Sosa asserts that he gave his trial counsel paystubs showing that he worked for the golf course. The idea was to show that "no drug dealer [is] going to be cutting grass in Florida heat." Dkt. No. 58, p. 37.

However, when Sosa's trial counsel put the paystubs in chronological order, they contained a gap from between November 2015 and March 2016, a gap which "fit perfectly" with the indictment, which alleged that Sosa was engaged in drug conspiracy during that time. Dkt. No. 58. Sosa's trial counsel chose not to introduce the check stubs into evidence, because if the Government or a juror noticed the gap, "we're dead." Id., p. 37. Sosa's trial counsel decided to rest on the testimony of Sosa's wife and mother-in-law, both of whom testified that Sosa worked as a landscaper and not as a drug dealer. Id., p. 39.

Sosa's trial counsel made the tactical decision that the paystubs were too dangerous to enter into evidence, given the obvious potential to backfire if the gap was discovered. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." Skinner v. Quarterman, 528 F.3d 336, 341 (5th Cir. 2008). Sosa's trial counsel's decision did not make Sosa's trial obviously unfair. He used the testimony of Sosa's wife and mother-in-law to tell the jury that Sosa was a landscaper. Counsel was not ineffective for choosing to forgo entering the paystubs into

13

evidence when "such evidence clearly had the potential to backfire." Woods v. Johnson, 75 F.3d 1017, 1035 (5th Cir. 1996). This claim should be denied.

### E. Failure to Introduce Mitigating Evidence

Sosa asserts that his trial counsel failed to introduce mitigating evidence on his behalf at sentencing. This claim should be denied, as well.

At sentencing, Sosa's trial counsel's strategy was to preserve all possible issues for appeal. He objected to all of the PSR factual history that was based on the statements made by the co-conspirators, because he wanted to preserve a sufficiency of the evidence argument on appeal. CR Dkt. No. 138, pp. 2-3. He did not want the Fifth Circuit to rule that because he failed to object to the PSR, Sosa adopted the facts found in it and use those facts to find that the evidence was sufficient. Id. Accordingly, trial counsel identified conflicts in the testimony between co-conspirators, so as to undercut their credibility for appeal. Id., p. 4.

Sosa's trial counsel further argued that a 360-month sentence was far beyond the sentences received by the co-conspirators. CR Dkt. No. 138, pp. 15-21. He asked the Court for a downward departure to 144 months to reflect a sentence in line with those received by the co-defendants. Id.

Sosa argues that his trial counsel should have argued that Sosa was a drug and alcohol abuser and sought mitigation on those grounds. Dkt. No. 2, p. 14. As an initial matter, that argument was completely contrary to the trial strategy of portraying Sosa as a hapless patsy who was not involved with drugs and who was blamed by the co-conspirators as a way of receiving a more lenient sentence. CR Dkt. No. 135, pp. 181-85. Furthermore, the Sentencing Guidelines state that drug and alcohol addiction or abuse "ordinarily is not a reason for a downward departure." U.S.S.G. § 5H1.4.

"The strong presumption that counsel's challenged conduct was the product of reasoned trial strategy is the same at both the guilt-innocence and sentencing phases of criminal trial." Pape v. Thaler, 645 F.3d 281, 292 (5th Cir. 2011). The failure to present mitigating evidence, "if based on an informed and reasoned practical judgment, is well

within the range of practical choices not to be second-guessed." Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992).

Sosa's trial counsel chose to focus his arguments at sentencing on (1) not making arguments that would hurt Sosa on appeal and (2) pointing out that a 360-month sentence was far beyond what the co-defendants received for engaging in the same criminal behavior. This strategy was based on reasoned practical judgment and should not be second-guessed. Wilkerson, 950 F.2d at 1065. This claim should be denied.

Furthermore, Sosa claims that his trial counsel "refused to permit Petitioner to examine the PSR, did not attend the interview with the U.S. Probation Office, and never showed the completed report or asked Petitioner to check for accuracy." Dkt. No. 2, p. 17.

As to the claims that his trial counsel never reviewed the PSR with Sosa, that claim is belied by Sosa's sworn testimony at sentencing. Judge Hanen asked Sosa, "did you go over the Pre-Sentence Investigation Report with [your attorney]?" CR Dkt. No. 138, p. 2. Sosa responded, "Yes, Your Honor." Id.

"Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Sosa has provided no evidence to overcome the strong presumption of verity. Furthermore, Sosa's trial counsel testified that he reviewed all of the factual allegations in the PSR with Sosa and sent a copy of it to Sosa's wife, at Sosa's request. Dkt. No. 58, pp. 42-43. After listening to testimony at the evidentiary hearing, the Court finds Sosa's trial counsel testimony on this issue to be credible. This claim should be denied.

As to the claim that Sosa's trial counsel did not attend the PSR interview, the Fifth Circuit has held that "a presentencing interview is not a critical stage of the proceedings," where counsel's presence is required. U.S. v. Kinsey, 917 F.2d 181, 183 (5th Cir. 1990). Sosa's trial counsel testified that a defense investigator attended the interview "just to listen in and to make certain that the probation office wasn't going outside the bounds of what a normal PSR goes through." Dkt. No. 58, p. 41. Sosa has not shown how he was prejudiced by his counsel's absence. This claim, also, should be denied.

15

**IV. Recommendation**

It is recommended that the Petitioner Oscar Sosa's Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, Dkt. No. 1, be denied as meritless.

### A. Certificate of Appealability

Unless a circuit justice or judge issues a Certificate of Appealability ("COA"), a petitioner may not appeal the denial of a § 2255 motion to the Fifth Circuit. 28 U.S.C. § 2253(a), (c)(1). A petitioner may receive a COA only if he makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To satisfy this standard, a petitioner must demonstrate that jurists of reason could disagree with the court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Id. at 327; Moreno v. Dretke, 450 F.3d 158, 163 (5th Cir. 2006). A district court may sua sponte rule on a COA, because the court that denies relief to a petitioner is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000).

After reviewing Sosa's § 2255 motion and the applicable Fifth Circuit precedent, the Court is confident that no outstanding issue would be debatable among jurists of reason. Although Sosa's § 2255 motion raises issues that the Court has carefully considered, he fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Accordingly, it is recommended that a COA should be denied.

### B. Notice to Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on September 9, 2021.

_____
Ronald G. Morgan
United States Magistrate Judge